UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ASHLY WAGER,                                    :

                        Plaintiff,              :

            -against-                           :        **MEMORANDUM AND ORDER**

G4S SECURE INTEGRATION, LLC,                    :        19-CV-3547 (MKV) (KNF)

                        Defendant.              :
--------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE


# BACKGROUND

In her June 29, 2020 letter, plaintiff Ashly Wager ("Wager") requested a pre-motion

conference "for a protective order quashing several subpoenas and their common Exhibit A

thereto dated June 25, 2020 (served on counsel for Wager on June 26, 2020) issued by Defendant

G4S Secure Integration, LLC ('G4S') to nonparties Convirgent Technologies; Access Control

Technologies; Redhawk Fire & Security; Securitas Security Services USA; Champion Logisics

(the 'Subpoenas') (ECF 101-1) (annexed as Exhibit A)."  Docket Entry No. 102.  In the July 14,

2020 joint letter, the parties requested a pre-motion conference in connection with the following

discovery disputes:

> *Wager's Requests:*
> A. compel discovery from G4S including, most importantly, (1) Wager's
> commission statements and related documents (the "Project Financials") as she is
> entitled to under Section 191(c) of the New York Labor Law as well as (2) any files
> and notes possessed by G4S' human resources and accounting departments;
> B. compel an updated and complete privilege log;
> C. resolve any issues pertaining to "Ron's iPhone;"
> D. deny any belated request for a confidentiality order by G4S as a condition to
> producing documents;
> E. overrule objections to three (3) non-party subpoenas issued by Wager; and
> F. permit a slightly over-length letter given the numerous issues addressed.

1

*G4S' Requests:*
A. compel discovery from Plaintiff, including: (1) her tax returns from 2017-present; and (2) any evidence supporting Plaintiff's claims for emotional distress;
B. obtain a ruling on a proposed joint protective order; and
C. overrule objections to the subpoenas issued by G4S to Plaintiff's current and former employers.

Docket Entry No. 106.

The Court denied the parties' requests for a pre-motion conference and directed that any motions concerning the issues raised in the plaintiff's June 29, 2020 letter, Docket Entry No. 102, and the July 14, 2020 joint letter, Docket Entry No. 106, be made no later than August 14, 2020. Docket Entry No. 112.

Before the Court are: (1) the defendant's motion "for an order compelling Plaintiff to respond fully to G4S' first set of written discovery requests by producing three years of her income tax returns and the personnel files from her current and former employers," Docket Entry No. 113; and (2) the plaintiff's motion for an order

a. Compelling document discovery (including ESI) from Defendant G4S pursuant to Fed. R. Civ. P. 37(a) including (i) Wager's commission statements and underlying calculations; (ii) native documents concerning Wager's projects at G4S relating to project estimates, costs, profits and commission calculations and distributions to Wager and her team members (collectively known as the "Project Financials"); as well as (iii) any files and notes possessed by G4S' human resources, accounting or other departments concerning Wager's commissions and termination;
b. Compelling the forensic copy of "Ron's iPhone" in G4S' counsel's possession pursuant to Fed. R. Civ. P. 37(a) and the Court's (Hon. Gregory Woods) prior Orders or, in the alternative, setting terms for a forensic review including, if necessary, a Court appointed expert;
c. Compelling an updated and complete privilege log from G4S pursuant to Fed. R. Civ. P. 26 and Local Civil Rule 26.2;
d. Overruling the objections to non-party subpoenas issued by Wager pursuant to Fed. R. Civ. P. 45 to Dr. Sara E. Boyd, Access Control Technologies, and Stephen Tukavkin;
e. Quashing, in part, G4S' non-party subpoenas to Convirgent (sp) Technologies; Access Control Technologies; Redhawk Fire & Security; Securitas Security Services USA; Champion Logistics; and

f. For the costs and fees relating to this application pursuant to Fed. R. Civ. P. 37(a)(5)(A) and (e) or otherwise along with any other relief the Court deems just proper and equitable.

Docket Entry No. 114.

## DEFENDANT'S MOTION

The defendant asserts that it requested that the plaintiff supplement her response to the defendant's Document Request No. 12, seeking "'[a]ll federal and state income tax returns for the tax years 2015 through and including the present, including all supporting documentation.' ECF No. 106, Ex. 3, p. 3."   The plaintiff objected on the grounds that: (a) "this request is overbroad, unduly burdensome, and beyond the scope of authorized discovery"; and (b) "G4S already possesses all relevant information concerning Wager's earnings from G4S."   The plaintiff's supplemental response to Document Request No. 12 did not include her income tax returns and she maintained her objection that "her tax returns were not relevant to her claim that she was wrongfully terminated based on her sex."   The defendant contends that the plaintiff refused to produce responsive information regarding her past or current employment, requested in Document Request No. 9, seeking "all documents or communications relating to her efforts to seek employment, including any 'resumes, applications for employment, cover letters, reference letters, job inquiries, offers of employment, employment agreements, or contracts, job advertisements, or postings, rejection letters, and any other communications with any employer.' ECF No. 106, Ex. 3, p. 2."   The plaintiff "objected on the ground that the request was overbroad, unduly burdensome, beyond the scope of authorized discovery, confidential, privileged, and within G4S' custody or control."   According to the defendant, given the plaintiff's "unreasonable" refusal to produce documents, it "issued subpoenas to Plaintiff's current and former employers. ECF No. 101-1," seeking "a copy of Plaintiff's (1) employment applications;

(2) pay records; (3) W2 or 1099 Forms; (4) records regarding the reasons for leaving her

employment; (5) employment contracts; (6) performance evaluations; (7) reprimands,

commendations, promotions or demotions; (8) work restrictions; and (9) transfers. ECF No. 101-

1, Ex. A."  The defendant argues that the plaintiff's: (i) "complete copies of her income tax

returns for years 2016-2018" are relevant to calculating damages for her claims of gender

discrimination and retaliation, since the plaintiff seeks damages for lost wages under New York

Human Rights Law and the plaintiff is the only source for this information; and (ii) "personnel

files from her current and former employers are relevant to plaintiff's credibility and mitigation

efforts."  According to the defendant, at her deposition, the plaintiff "did not provide sufficiently

detailed testimony concerning her wages," and her testimony "suggested the information

contained in her tax returns would be relevant for purposes of calculating appropriate damages."

The defendant maintains that it seeks "personnel files to discover information regarding

Plaintiff's performance history and her mitigation efforts."  The defendant asserts that the

plaintiff's "claim for damages puts her subsequent employment directly at issue and is sufficient

to satisfy the broad concept of showing relevance.  While Plaintiff produced a copy of an offer

letter following her employment with G4S, this is insufficient.  G4S should be permitted to serve

its subpoenas to her current and former employers."  Furthermore, the plaintiff's "G4S'

employment application failed to fully identify the reasons for leaving her employment. As a

result, the reasons why Plaintiff ceased work in the past and whether she is currently employed

speaks directly to the issue of her credibility."  The defendant asserts that the plaintiff "should

release her personnel files or the documents in her personnel files that are relevant to wages,

performance, and reasons for leaving her employment" and "her tax returns."

## PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION

The plaintiff asserts that the defendant's "motion violates the Court's July 31, 2020 order" and fails to comply with Local Civil Rule 7.1 of this court because it does not include a notice of motion, separate memorandum of law or supporting affidavits, which is prejudicial to the plaintiff because she does not know what the defendant seeks in its motion. For example, "G4S appears to have previously asked the Court to 'overrule objections' to its subpoenas and to issue a protective order. (ECF 106)," but "does not appear to now affirmatively seek that relief. (ECF 113)." The defendant asserts in its motion that the plaintiff's tax returns are necessary because of the plaintiff's deposition testimony but failed to file the deposition transcript or serve it on the plaintiff. The plaintiff contends that she did not testify as the defendant claims; rather, she testified "that she sought commissions owed which do not require any consideration of Wager's current earnings, let alone several years of her tax records." The defendant's failure to comply with the rules is not excusable, in light of the Court's July 31, 2020 order, which "makes clear that compliance with the Local Rules is required," and the defendant, who elected to remove this case to federal court, is represented by two large law firms.

The plaintiff argues that the defendant's motion advances "an incorrect standard," namely, "the general standard of relevance set forth by Fed. R. Civ. P. 26 as well as the standard on motion to quash a subpoena pursuant to Fed. R. Civ. P. 45," which "are irrelevant on G4S' motion to compel employment and tax records from Wager." The defendant failed to show a compelling need for the plaintiff's tax returns or why they are relevant to any claim or defense in this action. The plaintiff maintains that her "tax returns are irrelevant because she seeks commissions owed by G4S for work completed at G4S and does not seek lost wages or any other form of damages relating to her current or former compensation." Moreover, the plaintiff "has a

confidentiality interest in certain aspects of her personnel records," which are also irrelevant because the plaintiff "seeks commissions owed from G4S; not damages resulting from loss of future earnings."  In support of her opposition to the motion, the plaintiff submitted her counsel's declaration with exhibits.

## DEFENDANT'S REPLY

The defendant asserts that the plaintiff's "argument that an affidavit or copy of plaintiff's deposition transcript is mandatory finds no support in the federal or local rules" and, although compliance with the Local Rules is mandatory, "[n]either Local Rule 6.1 nor 7.1 mandate [sic] the filing of an affidavit nor does the absence of an affidavit suggest G4S did not comply with the rules."  According to the defendant, Rule 26 of the Federal Rules of Civil Procedure applies to show relevancy on a motion to compel discovery, and the defendant satisfied the applicable relevancy standard.  In the complaint, the plaintiff seeks "statutory damages, enhanced damages, costs fees and injunctive relief" for gender discrimination under the New York City Human Rights Law, which is inconsistent with her "informal assurance stating she was not seeking damages for future loss of income damages or emotional distress."  "As a result of the inconsistencies, Plaintiff was asked during her deposition on July 28, 2020 whether she was seeking front pay, and she confirmed that she was," and the plaintiff testified that "in [her] industry, there are opportunity costs and damages" and "salary represents only a small portion of your total compensation."  Thus, the defendant interpreted reasonably the plaintiff's testimony that she seeks costs from lost opportunities due to her separation from the defendant, making her tax returns relevant and necessary to analyze changes in the plaintiff's financial situation over time and determine the appropriate damages calculation.

The defendant contends that the plaintiff's employment records are relevant because the plaintiff "failed to provide any information to establish the difference in her pay" at the time she started working for her current employer, Access Control Technologies ("ACT"), because she testified at her deposition that "[s]alaries tend to be a small portion of our total compensation packet." The plaintiff asserts, for the first time in her opposition to the defendant's motion, "that her damages are limited strictly to commissions owed from G4S." The defendant seeks only portions of the plaintiff's personnel files to determine her mitigation efforts and credibility and, aside from the plaintiff's informal assertion that she only seeks damages for commissions owed, the plaintiff failed to explain why documents requested are not relevant to her claim for damages. Attached to the defendant's reply are exhibits A and B.

## PLAINTIFF'S MOTION

The plaintiff contends that "[t]his action concerns Wager's claims that she is owed commission from G4S. Wager's 2017 and 2018 Commission Plans (the "Plans") are annexed to the Verified Complaint ("Cplt."). (ECF 1 at Exs. A-B)." The plaintiff asserts that she seeks unpaid commissions and expenses, and the defendant did not object to producing commission records and "Project Financials"; rather, the defendant "argues it will not produce them (or a privilege log) without a protective order in place but has failed to move for such protective order." The defendant also asserts, despite its vice president of human resource's testimony to the contrary, that "Human Resources records do not exist, and commission statements have been provided," without identifying those statements. The plaintiff contends that obtaining the "'Project Financials' in native form, concerning G4S' costs, expenses and profits on the contracts Wager sold on G4S' behalf is critical for Wager's claims."

7

According to the plaintiff, she requested "documents concerning the files and notes that relate to her employment file, termination and final commission statement" and "supplemented her requests following G4S' Lisa Kaiser's clear testimony that she had personal notes and files on Wager and G4S' John Bradford's testimony that both G4S human resources and accounting departments possessed records." However, the defendant asserts that "there are no 'files and notes' possessed by G4S' human resources and accounting department." The defendant should be compelled to produce documents that the witnesses testified exist. The plaintiff contends that the forensic copy of "Ron's iPhone" also must be produced by the defendant since it was not mentioned on the privilege log and the defendant did not move for a protective order.

The plaintiff asserts that she "is entitled to G4S's forensic copy of 'Ron's iPhone" because "Judge Woods' TRO issued on September 26, 2019 (ECF 56) required G4S to take 'physical possession' of Mr. Posner's phone. Judge Woods continued the order at the October 4, 2019 preliminary injunction hearing (ECF 85 at 27)."

However, G4S did not secure physical possession of the phone per the October 28, 2019 letter (ECF 81). Further, it only came to Plaintiff's attention that G4S made a forensic copy of the phone on or about December 2019 (Blaustein Aff. ¶ 9), but G4S did not inform Plaintiff of the date the phone was obtained and the forensic copy made. (Blaustein Decl. Exs. AA-BB). Wager repeatedly requested that the forensic copy be produced. (See e.g. Blaustein Decl. Exs. T, V, Z, AA at June 18, 2020 email and EE.). Moreover, despite several representations from G4S that it was amenable to production upon the execution of a confidentiality order, no mention of same appears in the privilege log, G4S failed to move for such order, even after Wager consented to it and asserted objections to scope – even though it possessed an entire forensic copy. (Blaustein Decl. Ex. Z and DD) and Plaintiff has no record of counsel timely informing either counsel for Wager or the Court of its inability to do so and G4S never informed the Court that it obtained its own forensic copy. (See ECF Docket).

The plaintiff contends that she is entitled to an updated and complete privilege log because the privilege log provided by the defendant is deficient and references only allege attorney-client correspondence from 2018. According to the plaintiff, the privilege log fails to

address the "Project Financials" and "Ron's iPhone" and does not indicate what documents are retained based on broad "confidentiality" concerns.  Having failed to provide the complete privilege log or move timely for a protective order, the defendant cannot show good cause for a protective order and it waived any right "to seek confidentiality."

The plaintiff maintains that the Court should overrule the defendant's objections to the subpoenas the plaintiff served on Dr. Sara E. Boyd ("Dr. Boyd"), ACT and Stephen Tukavkin ("Tukavkin") with respect to which the defendant has no standing to object, since it did not identify any privilege or right in connection with the documents requested from these non-parties.  The plaintiff contends that the defendant's non-party subpoenas directed to her employers Convirgent Technologies, ACT, Redhawk Fire & Security and Champion Logistics, as well as Securitas Security Services USA which never employed the  plaintiff, seeking confidential personal tax and medical documents must be quashed because the information sought is irrelevant and the plaintiff has privacy interest in her tax, financial and medical records. According to the plaintiff:

> G4S' Subpoenas sought Wager's "complete file and records" including tax information.  With respect to categories a), e) and f) of the G4S Subpoenas, Wager provided her post-G4S employment applications; certified that she did not collect unemployment or other benefits following her departure from G4S and that she has not entered into any employment contract other than accepting employment from Access Control Technologies (now Convirgent) since departing G4S.  Categories b), c), d), g), h), k), l) and m) seek confidential (i.e. tax and medical) documents that bear no relation to this matter and are designed only to intimidate and harass Wager.  Categories i) and j) are irrelevant but not objected to.

The plaintiff asserts that the defendant "lacks any basis in issuing subpoena to third parties having absolutely no relation to this case or with Wager, such as the subpoena issued to Securitas."  Thus, the subpoenas should be quashed.  In support of her motion, the plaintiff submitted her declaration with exhibits and her counsel's declaration with exhibits.

### DEFENDANT'S OPPOSITION TO THE PLAINITIFF'S MOTION

The defendant asserts that it: (a) agreed to produce "Project Financials" under a protective order, but the plaintiff failed to stipulate to it; and (b) produced the plaintiff's commission statements, and the plaintiff failed "to establish the confidential and proprietary information contained in the purported Project Financials is relevant to her breach of contract claim." The defendant contends that it "did not seek a protective order until Plaintiff requested confidential and proprietary business information, and it has not waived its right to protect its information." The defendant maintains that the plaintiff's "2018 Incentive Plan that governs her earned commissions is unambiguous and does not require Project Financials to interpret." Moreover, the plaintiff "was not provided Project Financials for purposes of calculating earned commissions during her employment with G4S," but she "received commission statements just like the documents G4S has produced in this case for purposes of earned commission calculations." Furthermore, "what would be earned" on a project at some time in the future is not relevant to commission calculations at the time of termination because "under her 2018 Incentive Plan, commissions are earned only as revenue is recognized." Contrary to the plaintiff's belief, "the Project Financials consist largely of project proposals prepared for various clients, which include information on the scope of a project, options for materials, the specifications for those materials, the parts inventory, warranty information, and terms and conditions," thus, this information is not relevant to a calculation of commissions. Even if Project Financials were relevant, the defendant agreed to produce them under a protective order.

According to the defendant, "Mr. Posner agreed to produce his personal device voluntarily for forensic imaging on December 30, 2019, and G4S informed Plaintiff of the same." "However, since the majority of the data on Mr. Posner's personal device, if not all of it,

would contain private and sensitive personal information rather than any evidence to support Plaintiff's unsubstantiated allegation, G4S proposed extracting mutually agreed upon data from the forensic image and producing it under a protective order." The defendant contends that, on May 11, 2020, it "suggested Global Digital Forensics located in White Plains, New York, as a joint forensic expert to extract mutually agreed upon data from Mr. Posner's device and produce any relevant data under a protective order" or, alternatively, invited the plaintiff to offer suggestions on a forensic expert or other method to identify any relevant data. However, the plaintiff ignored the defendant's proposal and failed to meet and confer in good faith, and now seeks what the defendant proposed over three months ago. Accordingly, the plaintiff's motion should be denied on this basis.

The defendant asserts that, on July 8, 2020, it produced a privilege log "containing a list of all documents that had been withheld from production based on privilege as of July 8, 2020." The defendant has expressed repeatedly to the plaintiff its concerns about producing unrestricted proprietary and private information, and "intends to produce an updated privilege log once routine measures are in place to protect the confidential information." According to the defendant, the plaintiff "assumes G4S must be withholding documents because G4S' privilege log marked only pre-litigation correspondence as privileged," and "it is unclear what updates Plaintiff demands that G4S make to its privilege log." For example, "counsel for G4S has preserved the chain of custody for the forensic image of Mr. Posner's cellphone since December 2019 and has yet to access the data" and, if the plaintiff "agreed to have Global Digital Forensics or another forensic imaging expert extract relevant data from Mr. Posner's device, G4S would have updated its privilege log to reflect any privileged documents, as is required."

The defendant argues that the plaintiff failed to show that the defendant's objections to nonparty subpoenas should be overruled, namely, the subpoena directed to: (1) Dr. Boyd is improper during fact discovery because "Dr. Boyd is a potential expert witness that was retained in anticipation of G4S' request for a Rule 35 examination," and the plaintiff "waived any damages for emotional distress," so her mental health is no longer at issue; (2) ACT seeks irrelevant information because the conduct of the plaintiff's former colleague Robert DeSimone has no bearing on the claims or defenses in this case; and (3) Tukavkin seeks his deposition and communications or documents involving him, but a deposition would be costly and of no benefit to the plaintiff since she acknowledged that "her interactions with Mr. Tukavkin were limited to him helping 'carry a grille downstairs for the football game.'"

The defendant asserts that the plaintiff has no basis to request that the defendant's subpoenas to her former and current employers be quashed since she refused to produce information regarding her employment history "for purposes of both mitigation and credibility." According to the defendant, the plaintiff's employment application with the defendant "failed to fully identify the reasons for leaving her employment," and her "LinkedIn profile is insufficient to establish her mitigation efforts nor does serve to clarify the discrepancies identified in her employment application regarding the stated reasons for leaving her former employers." The defendant requests that the Court "overrule the arguments advanced in Plaintiff's Pre-Motion Letter and allow G4S to serve its subpoenas to Champion Logistics, RedHawk Fire & Security, Access Control Technologies and Convergint Technologies."

The defendant maintains that its objections to the plaintiff's discovery are substantially justified and she failed to cooperate with the defendant in good faith; thus, the plaintiff is not

entitled to attorney's fees and costs.  Attached to the defendant's opposition memorandum of law are exhibits A through L.

## PLAINTIFF'S REPLY

The plaintiff asserts that the defendant's opposition to her motion does not include any affidavits in violation of this Court's July 31, 2020 order and Local Civil Rules 6.1 and 7.1.  The defendant "is concededly refusing to produce the Project Financials that are highly relevant to the plaintiff's claims" because the commission statements produced by the defendant "lack any detail or back-up," and the plaintiff does not need to accept the accuracy of the defendant's self-serving commission statements.  The plaintiff contends that the defendant obtained a forensic copy of "Ron's iPhone" without direction or authorization from the Court and misrepresented the facts to the Court.  The defendant did not take physical possession of "Ron's iPhone" as directed by the September 26, 2019 temporary restraining order, but took a forensic copy months later under unclear circumstances and absent any authority from the Court.  Thus, the Court "should compel production of the forensic image along with significant additional compensatory and punitive forms of relief."  Given that the defendant is withholding admittedly the Project Financials and forensic copy of "Ron's iPhone," its belated privilege log is not sufficient.

The plaintiff maintains that the defendant lacks standing to object to the plaintiff's subpoenas directed to nonparties because it failed to allege any privacy interest implicated by those subpoenas.  Even if the defendant has standing to object, it did not request any relief respecting the subpoenas.  The plaintiff asserts that the defendant's subpoenas to her employers must be quashed because the defendant offers no facts or legal support for the position that the plaintiff did not satisfy her obligation to show "mitigating efforts" or resolve alleged

"discrepancies" in connection with leaving her prior positions.  Furthermore, the plaintiff is

entitled to attorney's fees based on the defendant's "rampant and ongoing discovery failures."

## LEGAL STANDARD

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
(i) expressly make the claim; and
(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

A party may serve on any other party a request within the scope of Rule 26(b):
(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: (A) any designated documents or electronically stored information--including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form[.]

Fed. R. Civ. P. 34(a)(1)(A).

A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending -- or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;
(B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
(C) prescribing a discovery method other than the one selected by the party seeking discovery;
(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;
(E) designating the persons who may be present while the discovery is conducted;
(F) requiring that a deposition be sealed and opened only on court order;
(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and
(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c)(1).

"Rule 26(c) confers broad discretion on the trial court to decide when a protective order is

appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart,

467 U.S. 20, 36, 104 S. Ct. 2199, 2209 (1984).

On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37(a)(1).

*Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative*. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

Fed. R. Civ. P. 45(d)(3).

"Motions to compel and motions to quash a subpoena are both 'entrusted to the sound discretion of the district court.'" In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003) (citation omitted).

Except for letter-motions as permitted by Local Rule 7.1(d) or as otherwise permitted by the Court, all motions shall include the following motion papers: (1) A notice of motion, or an order to show cause signed by the Court, which shall specify the applicable rules or statutes pursuant to which the motion is brought, and shall specify the relief sought by the motion; (2) A memorandum of law, setting forth the cases and other authorities relied upon in support of the motion, and divided, under appropriate headings, into as many parts as there are issues to be determined; and (3) Supporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion.

Local Civil Rule 7.1(a).

## APPLICATION OF LEGAL STANDARD TO THE DEFENDANT'S MOTION

### *Procedural Deficiencies*

The defendant's motion is procedurally deficient because it does not contain: (a) a notice of motion, required by Local Civil Rule 7.1(a)(1); (b) supporting affidavits and exhibits containing any factual information and portions of the record necessary for the decision of the motion, required by Local Civil Rule 7.1(a)(2); and (c) "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action," required by Fed. R. Civ. P. 37(a)(1).  The defendant's reply is accompanied improperly by exhibits without any affidavit(s) identifying and

explaining those exhibits.  In support of its motion, the defendant makes citation to Docket Entry Nos. 101 ("Notice of Service of Subpoenas for the Production of Documents"), 102 (the plaintiff's July 29, 2020 letter-motion), 103 (the defendant's July 1, 2020 letter opposing the plaintiff's July 29, 2020 letter-motion) and 106 (the parties' July 14, 2020 joint letter-motion), none of which is admissible evidence.

In the subheading of her memorandum of law in opposition to the defendant's motion styled "Facts," the plaintiff asserts that the defendant's "motion violates the Court's July 31, 2020 order."  However, in the subheading of her memorandum of law styled "Argument," the plaintiff falls short of asserting that the defendant violated the Court's July 31, 2020 order; rather, she asserts that the defendant's failure to comply with the rules is not excusable, in light of the Court's July 31, 2020 order, which "makes clear that compliance with the Local Rules is required," without identifying any language in that order in support of her assertion.  Making an improper conclusory assertion, under the subheading "Facts" in the plaintiff's memorandum of law, that the defendant violated the Court's July 31, 2020 order, without identifying any language in the Court's order asserted to be violated, while at the same time not mentioning the defendant's purported violation of the Court's July 31, 2020 order, under the subheading "Argument" in the plaintiff's memorandum of law, is meritless, frivolous and not made in good faith.

Local Civil Rule 1.1 of this court provides that the "Local Civil Rules apply in all civil actions and proceedings governed by the Federal Rules of Civil Procedure," making compliance with the Local Civil Rules mandatory in this action.  Despite recognizing that the Local Civil Rules are mandatory, the defendant asserts that "[n]either Local Rule 6.1 nor 7.1 mandate the filing of an affidavit nor does the absence of an affidavit suggest G4S did not comply with the

rules." The defendant's assertion is rejected as frivolous. However, notwithstanding procedural deficiencies in the defendant's motion, mindful of Rule 1 of the Federal Rules of Civil Procedure and "a strong 'preference for resolving disputes on the merits,'" <u>New York v. Green</u>, 420 F.3d 99, 104 (2d Cir. 2005) (citation omitted), the Court will address the merits of the defendant's motion.

***Merits***

The plaintiff's argument that the defendant's motion advances an incorrect standard of relevance under Rules 26, which is irrelevant to the defendant's motion to compel, is baseless. Rule 26 of the Federal Rules of Civil Procedure governs pretrial discovery, including its scope and limits, and it applies to motions to compel.

<u>Plaintiff's Income Tax Returns: Document Request No. 12</u>

The defendant argues that the plaintiff's income tax returns are "relevant to calculating damages for her claims of gender discrimination and retaliation, since the plaintiff seeks damages for lost wages under New York Human Rights Law." The plaintiff argues that her income tax returns are irrelevant because she "seeks commissions owed by G4S for work completed at G4S and does not seek lost wages or any other form of damages relating to her current or former compensation."

The defendant's Document Request No. 12 seeks: "All federal and state income tax returns for the tax years 2015 through and including the present, including all supporting documentation." The plaintiff's response to Document Request No. 12 states: "Wager objects on the grounds that this request is overbroad, unduly burdensome, and beyond the scope of authorized discovery. Wager objects on G4S already possess [sic] all relevant information concerning Wager's earnings from G4S." Although the defendant's Document Request No. 12

seeks the plaintiff's income tax returns "for the tax years 2015 through and including the

present," the defendant stated in: (i) the joint July 14, 2020 letter that it seeks the plaintiff's "tax

returns from 2017-present"; and (ii) this motion that it seeks an order compelling the plaintiff to

produce "her income tax returns for years 2016-2018."  The defendant failed to explain the

discrepancies concerning the time periods for which it seeks the plaintiff's income tax returns,

including the change from the time period sought when the disputed Document Request No. 12

issue was raised by the defendant in the July 14, 2020 letter, "from 2017-present," to the time

period sought in the instant motion, "2016-2018."  Moreover, it appears that the defendant

abandoned its request for "all supporting documentation" because it seeks only the plaintiff's

income tax returns in its motion.

Notwithstanding the ambiguous and unexplained time period for which the defendant

seeks the plaintiff's income tax returns, the issue of their relevancy, namely, that they are

"relevant to calculating damages for her claims of gender discrimination and retaliation, since the

plaintiff seeks damages for lost wages under New York Human Rights Law," has been mooted

by the plaintiff's representation to the Court, in her opposition to the motion, that she "seeks

commissions owed by G4S for work completed at G4S and does not seek lost wages or any other

form of damages relating to her current or former compensation."  Since the defendant requested

the plaintiff's income tax returns to calculate "damages for her claims of gender discrimination

and retaliation because the plaintiff seeks damages for lost wages under New York Human

Rights Law," and the plaintiff "does not seek lost wages or any other form of damages relating to

her current or former compensation," no basis exists to compel the plaintiff to produce her

income tax returns for the purpose for which they were sought in the defendant's Document

Request No. 12.

Plaintiff's Personnel Files from Current and Former Employers: Docket Entry No. 9

The defendant argues that the documents in the plaintiff's personnel files are relevant "for purposes of determining her mitigation efforts and her credibility" and, more specifically, they "are relevant to wages, performance, and reasons for leaving her employment." The plaintiff asserts that she "has a confidentiality interest in certain aspects of her personnel records," which are also irrelevant because the plaintiff "seeks commissions owed from G4S; not damages resulting from loss of future earnings." The defendant's Document Request No. 9 seeks:

> All documents or communications relating to your efforts to seek employment from January 1, 2017, through and including the present including but not limited to any resumes, applications for employment, cover letters, reference letters, job inquiries, offers of employment, employment agreements, or contracts, job advertisements, or postings, rejection letters, and any other communications with any employer.

The plaintiff's response to Document Request No. 9 states:

> Wager objects on the grounds that this request is overbroad, unduly burdensome, and beyond the scope of authorized discovery. Wager also objects to the extent that any responsive documents are within G4S' control. Wager further objects to the extent that any responsive information is confidential or privileged. Subject to the foregoing objections, please see WAGER000061WAGER000080.

The plaintiff did not refute the defendant's argument that information sought by Document Request No. 9 is relevant "for purposes of determining her mitigation efforts and her credibility." Since the plaintiff did not assert that the information is not relevant to her mitigation efforts, the plaintiff's objection to Document Request No. 9, based on the ground that it is "beyond the scope of authorized discovery," is overruled. Except for making the conclusory assertion that the plaintiff "has a confidentiality interest in certain aspects of her personnel records," without identifying those aspects or the nature and extent of the alleged "confidentiality interest" in the

unidentified aspects, the plaintiff did not oppose the defendant's assertion that the information

sought by Document Request No. 9 is relevant to the plaintiff's credibility.  The plaintiff does

not argue in her opposition to the motion that Document Request No. 9 is overly broad or unduly

burdensome; thus, the plaintiff's objections to Document Request No. 9 on those grounds are

waived.  The Court finds that the information sought by the defendant's Document Request No.

9 is relevant to the plaintiff's mitigation efforts and her credibility.  Accordingly, compelling the

plaintiff to respond to Document Request No. 9 is warranted.

**APPLICATION OF LEGAL STANDARD TO THE PLAINTIFF'S MOTION**

Contrary to the plaintiff's assertion that her "2017 and 2018 Commission Plans (the

"Plans") are annexed to the Verified Complaint ("Cplt.").  (ECF 1 at Exs. A-B)," no exhibits are

attached to the verified complaint in this action; thus, this assertion is unsupported by evidence.

In its opposition to the plaintiff's motion, the defendant submitted a memorandum of law to

which it attached, improperly, Exhibits A through L, without any affidavit(s) identifying and

explaining them.  Accordingly, the defendant's opposition to the plaintiff's motion is not

supported by evidence.

Project Financials

The defendant objected to the plaintiff's post-deposition April 24, 2020 Document

Request No. 2 seeking "All documents and communications concerning 'project financials'

including without limitation 'project finance close-out reports' costs and profit/loss reports and

attribution of profits and payment of commissions concerning any contract or client procured or

worked on by Wager during the Relevant Period," on the grounds that it seeks: (i) trade secrets,

confidential and proprietary information, reserving "the right to condition the production of

documents containing confidential or proprietary information or trade secrets on the Court's

issuance of a confidentiality or protective order governing the disclosure of any such information"; and (ii) "information that is neither relevant nor proportional to the needs of this case." The defendant asserts in its opposition to the motion that, at the same time: (a) "G4S has agreed to produce Project Financials on numerous occasions as long as Plaintiff would agree to an attorneys' eyes only…protective order"; and (b) "Project Financials are irrelevant, disproportionate to the needs of this case, and represent nothing more than an effort to harass G4S." The defendant failed to explain its internally inconsistent position that, despite their irrelevancy, it agreed to produce "Project Financials." The defendant's assertions that "Project Financials" are not relevant because: (a) "Plaintiff's 2018 Incentive Plan that governs her earned commissions is unambiguous and does not require Project Financials to interpret"; and (b) the information contained therein is not what the plaintiff believes, are rejected as meritless in light of Rule 26(b)(1) of the Federal Rules of Civil Procedure providing that only relevant matter is discoverable and the defendant's acquiescing to produce the information requested. The Court finds that the plaintiff's Document Request No. 2, dated April 24, 2020, seeks relevant information and overrules the defendant's May 26, 2020 objection to the plaintiff's Document Request No. 2, on the relevancy ground.

Concerning "Project Financials," the defendant contends that it "did not seek a protective order until Plaintiff requested confidential and proprietary business information, and it has not waived its right to protect its information." The plaintiff served her Document Request No. 2 on April 24, 2020. However, the record in this case does not show that the defendant made a motion for a protective order in connection with any of the plaintiff's document requests, including the April 24, 2020 Document Request No. 2. The defendant indicated in the July 14, 2020 joint letter, under "G4S' Request," that it seeks to "obtain a ruling on a proposed joint

protective order," asserting that it: (a) "sent a proposed protective order" to the plaintiff "and made clear that this order needed to be entered prior to production of any such confidential documents"; and (b) "has agreed to produce these documents only under an appropriate protective order.  To date, Plaintiff has refused to agree to a protective order."  Knowing on July 14, 2020 that the plaintiff refused to agree to a protective order proposed by the defendant, the defendant also knew that no "joint protective order" existed on which to "obtain a ruling" from the Court.  Despite this knowledge and the Court's order directing that any motions concerning issues raised in the July 14, 2020 letter shall be made on or before August 14, 2020, the defendant failed to make a motion for a protective order or seek an extension of time to make a motion for a protective order.  The Court finds that the defendant waived its right to make a motion for a protective order.  Accordingly, the defendant's objections on the ground that the plaintiff's April 24, 2020 Document Request No. 2 contains "confidential or proprietary information or trade secrets" is overruled.

The defendant shall respond to the plaintiff's April 24, 2020 Document Request No. 2.

Commissions and Human Resources Documents

The plaintiff sought in her June 6, 2019 Document Request Nos. 2,[1] 5,[2] 6,[3] 9,[4] 10[5] and

16,[6] documents concerning the calculations of commissions she earned, commission records of

---

[1] The plaintiff's June 6, 2019 Document Request No. 2 seeks "All documents concerning Wager's G4S commission records."
The defendant responded:
> G4S objects to this Request on the basis that it seeks information already in Plaintiff's possession. G4S further objects to this request on the basis that it is vague and ambiguous, is overbroad and unduly burdensome. G4S further objects to this request to the extent it seeks information protected by attorney client privilege and/or the work product doctrine. Subject to and without waiving the foregoing, see documents bates stamped G4S 000001-G4S 000010; G4S 000244-G4S 000281.

[2] The plaintiff's June 6, 2019 Document Request No. 5 seeks
> All documents and communications concerning the assignment of clients and work to Wager during the relevant time period including but not limited to documents sufficient to identify contracts and other business secured by Wager, in whole or in part, on behalf of G4S, regardless of whether Wager was formally credited for obtaining such business.

The defendant responded:
> G4S objects to this Request, which assumes facts not in evidence. G4S further objects to this Request on the basis that it seeks confidential and proprietary client information. G4S further objects to this request on the basis that it is vague and ambiguous. Subject to and without waiving the foregoing, see documents bates stamped G4S 000244-G4S 000281.

[3] The plaintiff's June 6, 2019 Document Request No. 6 seeks "All documents and communications concerning the commission records of Wager's direct reports and team members including but not limited to Manager, Bob Farrell, Bob DiSimone and Dan Graft during the Relevant Time Period."
The defendant responded:
> G4S objects to this Request, which assumes facts not in evidence. G4S further objects to this request on the basis that it is vague and ambiguous, because "direct reports" and "team members" are not defined terms, and is further overbroad. G4S further objects to this Request on the basis that it seeks confidential information about other employees. G4S further objects to this Request on the basis that it seeks information not relevant to the allegations in Plaintiff's Complaint.

[4] The plaintiff's June 6, 2019 Document Request No. 9 seeks "All documents and communications concerning Wager's compensation, including but not limited to G4S' policies concerning commissions and the underlying calculations of commissions earned by Wager, during the relevant period."
The defendant responded:
> G4S objects to this Request on the basis that it seeks information already in Plaintiff's possession. G4S further objects to this request on the basis that it is vague and ambiguous, and it is overbroad. Subject to and without waiving the foregoing or the foregoing General Objections, see documents bates stamped G4S 000001-G4S 000010; G4S 000029-G4S 000030; G4S 000244-G4S 000281.

[5] The plaintiff's June 6, 2019 Document Request No. 10 seeks "All documents and communications concerning Wager's direct reports and team members, including but not limited to Manager, Bob Farrell, Bob DiSimone and Dan Graft's compensation, including commissions and the underlying calculations during the relevant time period."
The defendant responded:
> G4S objects to this Request, which assumes facts not in evidence. G4S further objects to this Request on the basis that it is vague and ambiguous, because "direct reports" and "team members" are not defined terms, and is further overbroad, is not proportional to the needs of this case, and responding would be unduly burdensome. G4S further objects to this Request on the basis that it seeks confidential information about other employees. G4S further objects to this Request on the basis that it seeks information not relevant to the allegations in Plaintiff's Complaint.

[6] The plaintiff's June 6, 2019 Document Request No. 16 seeks "All documents and communications relied on by G4S' human resources department in formulating the Commission Statement."
The defendant responded:
> G4S objects to this Request, which assumes facts not in evidence. G4S further objects to this request to the extent it seeks information protected by attorney client privilege, the work product doctrine,

other relevant personnel of the defendant and human resources records concerning commissions.

Thereafter, the plaintiff sought in her April 24, 2020 Document Request Nos. 3,[7] 5[8] and 8,[9]

documents and communications concerning her commissions.  Concerning "commission

statements," the defendant asserts that it has already produced them on July 8, 2019, without

making citation to any evidence.  The defendant does not assert that commission statements are

---

or other applicable privilege. G4S further objects to this Request on the basis that it is vague and ambiguous, and is further overbroad, not proportional to the needs of this case, and responding would be unduly burdensome. Subject to and without waiving the foregoing, see documents bates stamped G4S 000001-G4S 000010; G4S 000029-G4S 000030; G4S 000205; G4S 000244-G4S 000281.

[7] The plaintiff's April 24, 2020 Document Request No. 3 seeks "All documents and communications concerning Wager's commission payments, including but not limited to [a]uditing by the finance department, and calculations, commission check' as testified by Lisa Henderson during her deposition on February 5, 2020. See Lisa Henderson Tr. p. 46."
The defendant responded:

G4S objects to this Request because it seeks trade secret, proprietary, confidential, financial, or commercially sensitive information, the disclosure of which could negatively impact G4S' competitive or business position and/or result in a breach by G4S of an obligation to a third-party to maintain such information as confidential. G4S reserves the right to condition the production of documents containing confidential or proprietary information or trade secrets on the Court's issuance of a confidentiality or protective order governing the disclosure of any such information. Further, G4S objects to this Request because it is overly broad, unduly burdensome and neither relevant nor proportional to the needs of this case to produce "[a]ll documents and communications concerning Wager's commission payments" without any limitation. Subject to and without waiving any objection, G4S states it will produce any applicable and responsive documents subject to the issuance of an agreed upon protective order.

[8] The plaintiff's April 24, 2020 Document Request No. 5 seeks "All documents and communications concerning Wager's commissions including calculations and payments as testified to by Lisa Henderson during her deposition, see Tr. p. 4749, 79 and John Bradford during his deposition on February 6, 2020. See Tr. p. 14-15."
The defendant responded: "G4S objects to this Request because it is duplicative of Request No. 3. Please see G4S' Response to Request No. 3."

[9] The plaintiff's April 24, 2020 Document Request No. 8 seeks "All documents and communications concerning G4S' financials, including but not limited to profits and loss of the following G4S' projects on which Wager was involved: (a) SL Green, (b) 4 Bryan Park, (c) Dechert; and (d) Wesco as testified by Robert Farrell. See Tr. p. 30, 31."
The defendant responded:

G4S objects to this Request because it seeks trade secret, proprietary, confidential, financial, or commercially sensitive information, the disclosure of which could negatively impact G4S' competitive or business position and/or result in a breach by G4S of an obligation to a third-party to maintain such information as confidential. G4S reserves the right to condition the production of documents containing confidential or proprietary information or trade secrets on the Court's issuance of a confidentiality or protective order governing the disclosure of any such information. Further, G4S objects to this Request because it seeks information that is overly broad, unduly burdensome and neither relevant nor proportional to the needs of this case. Further objecting, this Request is vague, ambiguous in that it does not define the term "involved" which is subject to multiple interpretations. Subject to and without waiving any objection, G4S states it will produce any applicable and responsive documents subject to the issuance of an agreed upon protective order.

irrelevant since it asserts it produced them and it does not argue in its opposition to the plaintiff's motion that they are vague, ambiguous, overly broad or unduly burdensome. The defendant failed to address the plaintiff's arguments in connection with human resources documents. As indicated above, the defendant failed to make a motion for a protective order; thus, its objections on the grounds that the relevant document requests seek "trade secret, proprietary, confidential, financial, or commercially sensitive information" are overruled. The plaintiff's April 24, 2020 Document Request No. 5 is duplicative of her April 24, 2020 Document Request No. 3. The Court finds that compelling the defendant to respond to the plaintiff's June 6, 2019 Document Request Nos. 5, 6, 9, 10 and 16 and the April 24, 2020 Document Request Nos. 3 and 8, is warranted.

Forensic Copy of "Ron's iPhone"

In her reply, the plaintiff makes citation to the spoliation standard for the first time without any discussion of its application in this case. No argument based on spoliation concerning "Ron's iPhone" is made in the plaintiff's motion. The plaintiff did not make a motion for sanctions based on: (i) spoliation concerning "Ron's iPhone"; or (ii) a violation of Judge Woods' order concerning "Ron's iPhone." The plaintiff seeks only to compel the defendant to produce a forensic copy of "Ron's iPhone" made on or about December 30, 2019. The defendant contends that it proposed to the plaintiff "extracting mutually agreed upon data from the forensic image and producing it under a protective order," but the plaintiff ignored the proposal. However, the mere assertion, without any evidence in support, that "the majority of the data on Mr. Posner's personal device, if not all of it, would contain private and sensitive personal information rather than any evidence to support Plaintiff's unsubstantiated allegation," is not sufficient basis for the Court to sustain the defendant's objection to the plaintiff's request

for a forensic copy of "Ron's iPhone."  Despite knowing that the plaintiff did not consent to the defendant's proposal for "a joint forensic expert to extract mutually agreed upon data from Mr. Posner's device and produce any relevant data under a protective order," the defendant failed to make any motion for a protective order in connection with "Ron's iPhone" or to seek an extension of time to make such a motion.  Thus, the defendant waived its right to make a motion for a protective order.  Accordingly, compelling the defendant to produce a forensic copy of "Ron's iPhone" made on or about December 30, 2019, is warranted.

Updated and Complete Privilege Log

In light of the: (1) Court's findings above concerning the Project Financials, commissions, human resources documents and "Ron's iPhone"; (2) defendant's conditioning inclusion of the information concerning these documents on its privilege log based on the existence of a protective order; and (3) defendant's failure to make a motion for a protective order or seek an extension of time to make such a motion, the Court finds that the defendant waived its right to seek a protective order and to withhold any of these documents based on privilege.  Thus, the plaintiff's request for an updated and complete privilege log is moot.

Plaintiff's Subpoenas to Non-Parties Dr. Boyd, Tukavkin and ACT

The defendant did not address, in its opposition to the plaintiff's motion, the plaintiff's argument that "the defendant has no standing to object [to the nonparty subpoenas], since it did not identify any privilege or right in connection with the documents requested from these non-parties"; rather, the defendant objects to the subpoenas directed to Dr. Boyd, Tukavkin and ACT based on the relevancy ground.

"In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness."  Langford v. Chrysler Motors Corp., 513 F.2d 1121,

1126 (2d Cir. 1975). "A party lacks standing to challenge subpoenas issued to non-parties on the

grounds of relevancy or undue burden." Universitas Educ., LLC v. Nova Group, Inc., No. 11

Civ. 1590, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013).

The Court finds that the defendant has no standing to object to the plaintiff's subpoenas

directed to Dr. Boyd, Tukavkin and ACT because it failed to assert any claim of privilege or

personal right in connection with those subpoenas, and it has no standing to challenge them on

the ground of relevancy. Accordingly, the defendant's objections to the plaintiff's subpoenas

directed to Dr. Boyd, Tukavkin and ACT are overruled based on lack of standing.

Request to Quash Defendant's Subpoenas to Nonparties Convirgent Technologies, ACT,
Redhawk Fire & Security, Securitas Security Services USA and Champion Logistics

The plaintiff stated in her declaration in support of her motion that she "never worked for

any Securitas entity." In its reply, the defendant abandoned its request to serve the subpoena on

nonparty Securitas Security Services USA. Thus, the plaintiff's motion to quash the subpoena

on Securitas Security Services USA is moot.

The defendant's subpoenas seek from nonparties Convirgent Technologies, ACT,

Redhawk Fire & Security and Champion Logistics:

> Your complete file and records with regards to the employment of Ashly Wager
> . . . including, but not limited to: a) Written or electronic applications; b) Earnings
> and salary and supplemental pay records, salary and earnings basis (e.g., hourly
> wages, salary, minimum hours plus overtime, commission, bonus, etc.); c) W-2,
> W-4 and 1099 Forms; d) All records regarding resignation, termination, reasons for
> leaving employment; e) Records regarding disputes before state labor board
> regarding unemployment benefits; f) Any employment or other types of contracts;
> g) Job performance evaluations; h) Reprimands; i) Commendations; j) Promotions;
> k) Demotions; l) Work restrictions; and m) Transfers.

The plaintiff has standing to challenge the defendant's subpoenas because she asserts legitimate

privacy interests in her personal information, including tax documents and personnel records

containing financial and private information. "If the movants have standing, 'the next inquiry

requires weighing the relevance or probative value of the documents being sought against the privacy interests . . . asserted.'" Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P., No. 13 Civ. 1654 (RA)(HBP), 2014 WL 5420225, at *6 (S.D.N.Y. Oct. 24, 2014) (citation omitted).

The plaintiff asserts that the subpoenas' categories i) and j) "are irrelevant but not objected to." Thus, quashing the subpoenas' categories i) and j) is not warranted because the plaintiff does not object to them.

The plaintiff asserts that, "[w]ith respect to categories a), e) and f) of the G4S Subpoenas, Wager provided her post-G4S employment applications; certified that she did not collect unemployment or other benefits following her departure from G4S and that she has not entered into any employment contract other than accepting employment from Access Control Technologies (now Convergint) since departing G4S." Given that the plaintiff argues that she already produced information sought in categories a), e) and f), information sought in categories a), e) and f) is relevant. The plaintiff suggests that the categories a), e) and f) seek documents that are duplicative of what she already produced to the defendant, but she fails to explain why her privacy interest in information sought in categories a), e) and f) outweighs the relevance and probative value of the information sought in categories a), e) and f) or to identify any harm or prejudice that would attend her if categories a), e) and f) are not quashed. The plaintiff failed to make citation to any authority in support of her arguments that the defendant's subpoenas with respect to categories a), e) and f) must be quashed because: (1) the plaintiff produced certain documents to the defendant that may be duplicative of the documents sought in those categories; or (2) the defendant is precluded from seeking relevant evidence from nonparties based on the plaintiff's production of certain documents that may be duplicative. The plaintiff also failed to make citation to any authority requiring the defendant to rely on the plaintiff's factual

representations and barring the defendant from verifying the plaintiff's factual representations through relevant evidence sought and obtained from nonparties.  Accordingly, the plaintiff's objections to the subpoenas' categories a), e) and f) are overruled and her request to quash categories a), e) and f) of the subpoenas is denied.

The plaintiff asserts that categories b), c), d), g), h), k), l) and m) "seek confidential (i.e. tax and medical) documents" and "are designed only to intimidate and harass" her.  The defendant contends that it seeks the plaintiff's personnel files "to establish [the plaintiff's] mitigation efforts" and test her credibility in connection with her performance and the "reasons for leaving her former employers."  On their face, categories b), c), d), g), h), k), l) and m) do not appear to seek the plaintiff's medical information, and the plaintiff did not explain the basis for her assertion that they seek medical information or identify any particular request doing so.

> Tax returns qualify as protected matter, and "[c]ourts have been reluctant to require disclosure of tax returns because of both 'the private nature of the sensitive information contained therein' and 'the public interest in encouraging the filing by taxpayers of complete and accurate returns.'" *Rahman v. Smith & Wollensky Rest. Group, Inc.,* 2007 WL 1521117, at *7 (S.D.N.Y. May 24, 2007) (*quoting Smith v. Bader,* 83 F.R.D. 437, 438 (S.D.N.Y.1979)). The standard for ordering disclosure is two-part; the moving party must demonstrate that 1) the returns are relevant to the subject matter of the action and 2) a compelling need for the information. *Id.* (*citing Hazeldine v. Beverage Media, Ltd.,* 1997 WL 362229, at *4 (S.D.N.Y. June 27, 1997)).
>
> Ellis v. City of New York, 243 F.R.D. 109, 111–12 (S.D.N.Y. 2007).

Although the subpoenas do not seek the plaintiff's income tax returns, category c) seeks the plaintiff's personal documents related to tax returns, namely, "W-2, W-4 and 1099 Forms." Other than asserting that the requests in the subpoenas seek information relevant to the plaintiff's "mitigation efforts" and credibility, the defendant failed to show: (a) how the plaintiff's specific tax documents, namely, "W-2, W-4 and 1099 Forms," are relevant to the plaintiff's "mitigation

efforts" and credibility; and (b) a compelling need for the plaintiff's tax documents. The Court is not convinced that overruling the plaintiff's objection, based on the privacy interest in her personal tax documents, to category c), namely, the request for her "W-2, W-4 and 1099 Forms" is warranted. Accordingly, the Court sustains the plaintiff's objection to category c).

Categories b), d), g), h), k), l), m) seek the plaintiff's earnings and job performance information, including any adverse action by her employers as well the reasons for leaving employment. The defendant asserts in conclusory fashion that the information sought in categories b), d), g), h), k), l), m) is relevant to the plaintiff's mitigation of damages and her credibility. Concerning the plaintiff's credibility, the defendant asserts, without any evidence in support, that the plaintiff's employment application with the defendant "failed to fully identify the reasons for leaving her employment," and her "LinkedIn profile is insufficient to establish her mitigation efforts nor does it serve to clarify the discrepancies identified in her employment application regarding the stated reasons for leaving her former employers." The defendant failed to explain any basis for these assertions or any evidence to support them. Accordingly, the defendant's argument that categories b), d), g), h), k), l) and m) seek information that is relevant to the plaintiff's credibility is rejected as meritless. Concerning the plaintiff's mitigation of damages, the defendant seeks the plaintiff's "[e]arnings and salary and supplemental pay records, salary and earnings basis (e.g., hourly wages, salary, minimum hours plus overtime, commission, bonus, etc.)" from her "current and former employers." However, the defendant failed to identify in the July 14, 2020 joint letter motion, the defendant's motion or its opposition to the motion the: (i) plaintiff's current employer; and (ii) dates during which the plaintiff was employed by any of the employers subpoenaed. It would appear from the defendant's argument concerning credibility that some of the plaintiff's former employers' data concern the plaintiff's

employment that pre-dates the plaintiff's employment with the defendant, in which case the relevance of the plaintiff's earnings prior to her employment with the defendant to her mitigation of damages is not clear.  Assuming that the defendant's subpoenas concern the time period subsequent to the plaintiff's employment with the defendant, and that the information requested in category b) is relevant to the plaintiff's mitigation of damages, the defendant failed to show the compelling need for the sweeping extent of its request for sensitive personal and private information about the plaintiff's earnings.  The defendant failed to convince the Court that overruling the plaintiff's objections to categories b), d), g), h), k), l), m) is warranted; thus, they are sustained.

Attorney's Fees and Costs Pursuant to Fed. R. Civ. P. 37(a)(5)(A) and (e)

Although the plaintiff's notice of motion indicates that the plaintiff requests attorney's fees and costs "pursuant to Fed. R. Civ. P. 37(a)(5)(A) and (e)," the plaintiff failed to make any argument in connection with that request in her motion.  The plaintiff only mentioned attorney's fees and costs in her reply brief, responding to the defendant's argument in its opposition to the motion that attorney's fees and costs are not warranted and making citation to legal authorities. Other than making a conclusory assertion, the plaintiff failed to make any argument that the defendant spoliated evidence.  In the absence of any argument in support of the affirmative request for attorney's fees and costs in the plaintiff's motion, responding to the defendant's argument that the attorney's fees and costs are not warranted is not an affirmative request for relief.  The Court declines to consider the plaintiff's belated and improper attempt to make a new argument in the reply brief that was omitted from the brief in support of the motion.  See Ernst Haas Studio, Inc. v. Palm Press, Inc., 164 F.3d 110, 112 (2d Cir. 1999) ("new arguments may not be made in a reply brief").

**CONCLUSION**

For the foregoing reasons: (1) the defendant's motion, Docket Entry No. 113, is denied in part and granted in part, and the plaintiff shall respond to the defendant's Document Request No. 9 on or before December 11, 2020; (2) the plaintiff's motion, Docket Entry No., 114, is granted in part and denied in part and, on before December 11, 2020, the defendant: (i) shall respond to the plaintiff's April 24, 2020 Document Request No. 2, (ii) shall respond to the plaintiff's June 6, 2019 Document Request Nos. 5, 6, 9, 10 and 16 and the April 24, 2020 Document Request Nos. 3 and 8, (iii) shall produce a forensic copy of "Ron's iPhone" made on or about December 30, 2019, (iv) need not provide an updated privilege log, and (v) may serve only categories a), e), f), i) and j) of the subpoenas on nonparties Convirgent Technologies, ACT, Redhawk Fire & Security and Champion Logistics.

Dated: New York, New York                           SO ORDERED:
       November 27 , 2020

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

33