UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ASHLY WAGER,                                         :

                 Plaintiff,          :

       -against-                              :          **MEMORANDUM AND ORDER**

G4S SECURE INTEGRATION, LLC,          :          19-CV-3547 (MKV) (KNF)

             Defendant.        :
--------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

### DEFENDANT'S MOTION FOR SANCTIONS

Before the Court is the defendant's motion for sanctions against plaintiff and her counsel

pursuant to the Court's inherent authority.  The defendant argues:

> Plaintiff and her counsel should be sanctioned for their repeated discourteous
> behavior in violation of the New York Rules of Professional Conduct, including:
> (1) filing a sham TRO [temporary restraining order] supported solely by plaintiff's
> perjury; (2) engaging in undignified and discourteous behavior by personally
> attacking opposing counsel during her pregnancy; and (3) repeatedly threatening
> G4S non-party employees with criminal charges solely to gain a litigation
> advantage.

More specifically, the defendant argues:

> A. Plaintiff and Her Counsel Committed a Fraud on This Court And Violated Rules
> 3.1(a) and Rule 3.3(a)(3) By Filing an Emergency TRO Supported Solely By
> Plaintiff's Perjury And Failing To Conduct Any Reasonable Inquiry Into Plaintiff's
> Non-Meritorious Claims And Contentions.
> B. Plaintiff's Counsel Repeatedly Bullied Counsel for G4S During Her Pregnancy,
> Calling her a "Fucking Retard" and Opposing Her Need for Lactation Breaks.
> C. Plaintiff's Counsel Has Repeatedly Threated Frivolous Criminal Charges In
> Order To Gain An Advantage In This Litigation.

Under its argument "A," the defendant asserts:

> Rule 3.1(a) clearly prohibits non-meritorious claims and contentions like the
> Plaintiff's sham TRO, stating: "[a] lawyer shall not bring or defend a proceeding,
> or assert or controvert an issue therein, unless there is a basis in law and fact for

doing so that is not frivolous. Initially, Judge Woods has already approved sanctions against Plaintiff and her counsel for perpetuating a fraud on this Court through her sham application for a TRO. Plaintiff and her counsel alleged that her Dropbox had been accessed in an unauthorized manner by Mr. [Ron] Posner, Plaintiff's former supervisor. However, Plaintiff perjured herself by alleging that Mr. Posner had taken a copy of a contract form a former employer, when Plaintiff herself had voluntarily sent that contract to G4S. Plaintiff's perjury caused counsel for G4S to undertake needless briefing and travel to New York in order to challenge her false claims. Thus, Judge Woods noted that he would be "happy" to consider a request that these costs and fees be reimbursed by Plaintiff and her counsel. SOF ¶¶ 6-7. To this day, there is not a shred of evidence that anyone associated with G4S accessed Plaintiff's Dropbox; however, Plaintiff continues to pursue this wild goose chase. G4S has been diligent in complying with discovery requests and allowing Plaintiff to pursue this paranoid theory, but all evidence supports G4S' position that there was no unauthorized access of Plaintiff's Dropbox. SOF ¶¶ 13-16.[1]

Under argument "B," the defendant contends:

Plaintiff's counsel engaged in hostile and bullying behavior towards counsel for G4S during the third trimester of her pregnancy, by screaming at her for an extended period during a meet and confer and calling her a "fucking retard." Obviously, this caused severe emotional distress not only to G4S' counsel, but to her unborn child. Due to the shock of this attack by Plaintiff's counsel, counsel for G4S was unable to speak, and had to continue listening to this unprofessional barrage. SOF ¶¶ 17-23. As if bullying Ms. [Kelly Elisabeth] Eisenlohr-Moul during her pregnancy was not enough, counsel for Plaintiff continued his unprofessional conduct after Ms. Eisenlohr-Moul gave birth. Specifically, Mr. [Samuel] Blaustein complained about Ms. Eisenlohr-Moul's need to take lactation breaks every 3-4 hours during day-long depositions, and mocked her scheduling restrictions due to COVID-limited childcare. Such unprofessional behavior is abhorrent and directly contradicts the mandates of Rule 3.3(f) prohibiting conduct that is undignified or discourteous, and Rule 3.1, prohibiting conduct in a proceeding that serves merely to harass or maliciously injury another. Such undignified and discourteous behavior should not be tolerated by this Court, and should result in appropriate sanctions to ensure that Plaintiff's counsel does not engage in such blatantly sexist behavior in the future. SOF ¶¶ 17-23.

Under argument "C," the defendant asserts:

Plaintiff's counsel has repeatedly violated New York Rule of Professional Conduct Rule 3.4(e) by consistently threatening to file frivolous criminal charges against Mr. Posner, based upon the same baseless allegations that formed the basis of Plaintiff's fraudulent TRO. Specifically, Plaintiff's counsel made this threat on the

---

[1] Nowhere in its motion did the defendant identify the words for which the acronym "SOF" stands.

record during the TRO hearing, and continued to reiterate his intention to file criminal charges against Mr. Posner.  Plaintiff's counsel made many false statements in furtherance of these threats, including his allegation that he had retained a barrister in the United Kingdom in order to contain certain records from G4S' international headquarters. SOF ¶¶ 24-29. Rule 3.4(e) prohibits this exact behavior, stating that a lawyer shall not: "present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter." As a result, Plaintiff and her counsel have repeatedly contravened the New York Rules of Professional Conduct, and must be sanctioned to prevent further abuses.

The defendant "requests this Court sanction Plaintiff and her counsel in the amount of G4S'

attorneys' fees and costs for the TRO and this motion."

In support of its motion, the defendant submitted declarations by Eisenlohr-Moul and

Jennifer Lynn Pope ("Pope").  Eisenlohr-Moul states in her declaration:

1. Following his client's TRO loss, Plaintiff's counsel Samuel Blaustein began to bully me while I was in the third trimester of my first pregnancy.
2. For instance, during a meet and confer telephone conference regarding written discovery disputes, Plaintiff's counsel Samuel Blaustein screamed at me and called me "a fucking retard" because he did not agree with a legal position my client was taking regarding whether Plaintiff was due commissions.
3. I maintained my professional calm, but I was extremely upset by this unprovoked attack, which also witnessed by my associate, Jennifer Pope.
4. During that time, I was in the third trimester of my pregnancy during a global pandemic, and was in a very vulnerable state.
5. The harassment and bullying from Mr. Blaustein caused me and my unborn child severe emotional distress.  For instance, due to the shock of this attack by Plaintiff's counsel, I was unable to speak for several moments and had to continue listening to this unprofessional barrage without being able to defend myself against this hateful and offensive language.
6. Mr. Blaustein continued to bully me even after I gave birth, complaining about my need for lactation breaks and my COVID-limited childcare.
7. Mr. Blaustein's conduct in attacking me based on my pregnancy and need to feed my infant was boorish, sexist, unprofessional, and continues to cause me emotional distress.
8. As of the date of this Affidavit, Mr. Blaustein has never apologized for his unprofessional language or actions.
9. In addition to bullying me, Mr. Blaustein also repeatedly threatened to file criminal charges against Mr. Posner based on the same allegations discredited by Plaintiff's fraudulent TRO.

10. Namely, Mr. Blaustein threatened me, stating that his client intended to press criminal charges against Mr. Posner if G4S did not produce certain documents and information.

11. In support of these threats, Mr. Blaustein described in detail his actions in hiring a barrister in the United Kingdom to subpoena documents from G4S, purportedly to bring criminal charges against Mr. Posner.

12. These threats were clearly made for the sole purpose of obtaining a litigation advantage, as Plaintiff and her counsel never followed through on any of these threats.

13. I repeatedly reminded counsel for Plaintiff that Mr. Posner was not a party to this lawsuit, that Mr. Posner was not represented by counsel for G4S, and that if Plaintiff believed she had criminal claims against a third party, she must pursue them independently and not threaten criminal actions against that third party in order to gain an advantage.

14. Undeterred, counsel for Plaintiff has continued to threaten criminal actions against Mr. Posner in the mistaken belief that this action will force G4S to cave to his client's unreasonable settlement demands.

15. Despite Plaintiff and her counsel's actions in pursuing a fraudulent TRO premised on perjury, G4S chose not to immediately pursue its attorneys' fees and costs for the fraudulent TRO, in hopes that this gesture of goodwill would help the parties reach a resolution.

Pope states in her declaration:

1. Following the TRO loss, Plaintiff's counsel began to bully Ms. Eisenlohr-Moul, counsel for G4S, who was pregnant with her first child.

2. For instance, during a meet and confer telephone conference regarding written discovery disputes, Plaintiff's counsel Samuel Blaustein screamed at Ms. Eisenlohr-Moul, calling her "a fucking retard."

3. During that time, Ms. Eisenlohr-Moul was in the third trimester of her pregnancy during a global pandemic.

4. Counsel for Plaintiff continued to bully Ms. Eisenlohr-Moul even after she gave birth, complaining about her need for lactation breaks and her childcare schedule during depositions.

5. In addition to bullying Ms. Eisenlohr-Moul, counsel for Plaintiff also repeatedly threatened to file criminal charges against Mr. Posner based on the same allegations discredited by Plaintiff's TRO loss.

6. Namely, counsel for Plaintiff threatened that his client would press criminal charges against Mr. Posner if G4S did not produce certain documents and information in Mr. Posner's possession.

7. For instance, I heard counsel for Plaintiff describe in detail his hiring of a barrister in the United Kingdom to subpoena documents from G4S international headquarters in London, purportedly to bring criminal charges against Mr. Posner.

8. These threats appear to have been made for the sole purpose of obtaining a litigation advantage, as Plaintiff and her counsel never followed through on any of these threats.

4

9. I and Ms. Eisenlohr-Moul repeatedly reminded counsel for Plaintiff that Mr. Posner is not a party to this lawsuit, that Mr. Posner is not represented by counsel for G4S, and that if Plaintiff believed she had criminal claims against a third party, she must pursue them independently and not threaten criminal actions against that third party in order to gain a litigation advantage.

10. Undeterred, counsel for Plaintiff has continued to threaten criminal actions against Mr. Posner in the mistaken belief that this action will force G4S to cave to Plaintiff's unreasonable demands.

### PLAINTIFF'S OPPOSITION TO THE MOTION FOR SANCTIONS

The plaintiff argues that the defendant offered no evidence in support of its motion and provided no citation to any case supporting her request for sanctions arising out of the TRO at this time. The plaintiff maintains that the defendant's self-serving statement that Blaustein used a pejorative phrase and bullied counsel is not supported by the record and is meritless. Blaustein has no recollection of making any pejorative statements and the record shows that he extended courtesies to the plaintiff's counsel based on her pregnancy, including consenting to her nursing schedule. Moreover, none of the complained of conduct is sanctionable in this circuit, including that the plaintiff discussed serving a subpoena on the defendant at its corporate headquarters in London. "The unsupported allegations contained in the nearly identical affidavits of Ms. Eisenlohr-Moul are demonstrably false" as the defendant presented no documentation indicating the defendant's threats of criminal charges against the defendant's employee Posner.

In support of the plaintiff's opposition to the motion, Blaustein submitted his declaration with exhibits. Blaustein states: (1) "G4S does not seek any relief pertaining to the alleged statement or statements which I do not recall making"; (2) "Wager and her counsel accommodated every request made by counsel for G4S including a request to stay the case in light of Ms. Eisenlohr-Moul's pregnancy"; (3) "G4S never raised these alleged issues to the Court or me at any time prior to making its motion including in the papers underlying the

Discovery Order"; (4) "at no point did I ever threaten to hire a barrister or to otherwise seek discovery in the United Kingdom from G4S' corporate parent for purposes of filing criminal charges against Mr. Posner or otherwise"; (5) "in July of 2020, Ms. Eisenlohr-Moul sought Wager's consent for a multi-month stay of trial deadlines due to her pregnancy, of which she was in the third trimester, and Wager consented without any pre-condition. (ECF 105);" (6) "[f]ollowing the parties' submission of the January 25, 2021 joint letter (ECF 131), the parties held a meet-and-confer call February 5, 2021 which, to the best of my recollection, was the final meet-and-confer call before the settlement conference and mediation"; and (7) "[i]mmediately after the February 5, 2021 meet-and-confer call, emails were exchanged between me, Kelly Eisenlohr-Moul and Jennifer Pope.  There was no mention of any misconduct, complaints or otherwise.  A copy of a February 5 through February 11, 2021 email trail between counsel for the parties is annexed as Exhibit 6."  According to Blaustein, concerning counsel's lactation breaks, counsel's

> allegations that she was not permitted to take lactation breaks are contrary to the record and simply false. (E.g. ECF 156-1, Posner Tr. V1 69:8-20).
> 8 MS. EISENLOHR-MOUL: I'm going to need to
> 9 get on a nursing schedule with my newborn. I'm
> 10 going to need like every three hours, I'm going
> 11 to need a half an hour.
> 12 MR. BLAUSTEIN: Tell me when you need to
> 13 go.
> 14 MS. EISENLOHR-MOUL: By 12:00. If you
> 15 want to take a longer break now, that's fine.
> 16 If you want to wait until 12:00, 12:30.
> 17 MR. BLAUSTEIN: That's fine. Why don't we
> 18 take a solid two minutes. We will come back
> 19 and take a longer break at 12:00 or 12:30.
> 20 MS. EISENLOHR-MOUL: Sounds good.

Blaustein states:

> A copy of an April 28-29, 2021 email chain and draft pre-motion letter I sent to counsel for G4S on April 28, 2021 concerning outstanding discovery and Wager's

fee application is annexed as Exhibit 7.  Counsel for G4S, Ms. Eisenlohr-Moul, responded to my April 28, 2021 email on April 29, 2021 without addressing my requests and instead stating for the first time that G4S would move for sanctions concerning the TRO and unidentified unprofessional and hostile comments I allegedly made during Ms. Eisenlohr-Moul' s pregnancy approximately a year earlier in 2020.

Exhibit 7 to Blaustein's declaration contains an email message from Eisenlohr-Moul to him,

dated April 29, 2021, stating:

Thank you for your email.  At a minimum, we will also need to set a briefing schedule on our fees and costs for your TRO loss and the perjury that occurred in that proceeding, as well as your extremely unprofessional and hostile comments to me during my pregnancy.  We will be in touch on other to-do items, including follow-up discovery.

### DEFENDANT'S REPLY

The defendant asserts that the plaintiff did not prevail on her TRO application and "Judge Woods authorized G4S to pursue sanctions."  The plaintiff's TRO was fraudulent and violated New York Rule of Professional Conduct 3.1(a).  According to the defendant, the plaintiff's counsel "reserved his unprofessional conduct for the parties' telephone conferences," and his threatening "statements were verbal," so it is not surprising that no written record exists about his misconduct.  Counsel's threats are prohibited by Rule 3.4 of New York Rules of Professional Conduct.  Furthermore, Blaustein claims he "has no recollection" of calling the defendant's counsel a "fucking retard" during her third trimester of pregnancy and "disregards the sworn affidavits submitted by G4S in support of its motion" by Eisenlohr-Moul and Pope, stating that "each have [sic] a clear recollection and witnessed Plaintiff's counsel calling Ms. Eisenlohr-Moul a 'fucking retard.'"  According to the defendant, the plaintiff relies on unrelated matter to conclude that her counsel's conduct was not sanctionable.

**LEGAL STANDARD**

It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *United States v. Hudson,* 7 Cranch 32, 34, 3 L. Ed. 259 (1812); *see also Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S. Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing *Hudson*). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn,* 6 Wheat. 204, 227, 5 L. Ed. 242 (1821); *see also Ex parte Robinson,* 19 Wall. 505, 510, 22 L. Ed. 205 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.,* 370 U.S. 626, 630–631, 82 S. Ct. 1386, 1388–1389, 8 L.Ed.2d 734 (1962).

Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991).

"Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Id. at 44-45, 111 S. Ct. at 2132-33. "[A] federal court has the power . . . to discipline attorneys who appear before it. *See Ex parte Burr,* 9 Wheat. 529, 531, 6 L. Ed. 152 (1824). While this power 'ought to be exercised with great caution,' it is nevertheless 'incidental to all Courts.' *Ibid*." Id., at 43, 111 S. Ct. at 2132. "[I]n narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel." Id., at 45, 111 S. Ct. at 2133 (citation omitted).

A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees. Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

Id., at 50, 111 S. Ct. at 2136 (citation omitted).

8

[A] court may assess attorney's fees when a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Alyeska, supra,* 421 U.S., at 258–259, 95 S. Ct., at 1622–1623 (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S. Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)). See also *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct.1943, 1946, 36 L.Ed.2d 702 (1973); *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, n. 4, 88 S. Ct. 964, 966, n. 4, 19 L.Ed.2d 1263 (1968) *(per curiam).* In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, *Universal Oil, supra,* 328 U.S., at 580, 66 S. Ct., at 1179, as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order," *Hutto,* 437 U.S., at 689, n. 14, 98 S. Ct., at 2573, n. 14. The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy." *Ibid.*

Id. at 45–46, 111 S. Ct. at 2133.

[T]he court can shift only those attorney's fees incurred because of the misconduct at issue. Compensation for a wrong, after all, tracks the loss resulting from that wrong. So as we have previously noted, a sanction counts as compensatory only if it is "calibrate[d] to [the] damages caused by" the bad-faith acts on which it is based. A fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned. But if an award extends further than that—to fees that would have been incurred without the misconduct—then it crosses the boundary from compensation to punishment. Hence the need for a court, when using its inherent sanctioning authority (and civil procedures), to establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party. That kind of causal connection, as this Court explained in another attorney's fees case, is appropriately framed as a but-for test: The complaining party (here, the Haegers) may recover "only the portion of his fees that he would not have paid but for" the misconduct. *Fox v. Vice,* 563 U.S. 826, 836, 131 S. Ct. 2205, 180 L.Ed.2d 45 (2011); see *Paroline v. United States,* 572 U.S. ——, ——, 134 S. Ct. 1710, 1722, 188 L.Ed.2d 714 (2014) ("The traditional way to prove that one event was a factual cause of another is to show that the latter would not have occurred 'but for' the former"). . . .  When a "defendant would have incurred [an] expense in any event[,] he has suffered no incremental harm from the frivolous claim," and so the court lacks a basis for shifting the expense. . . . .  The court's fundamental job is to determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct.

Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186–87 (2017) (citations omitted).

> A court may sanction a party under its inherent power to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court. "Sanctions for fraud are warranted if it is established by clear and convincing evidence that [a party] has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." Thus, clear and convincing evidence of bad faith is a prerequisite to an award of sanctions under the court's inherent power.
>
> Yukos Capital S.A.R.L. v. Feldman, 977 F.3d 216, 235 (2d Cir. 2020) (citations omitted).

"The business of the court is to dispose of litigation and not to act as a general overseer of the ethics of those who practice here unless the questioned behavior taints the trial of the cause before it." W. T. Grant Co. v. Haines, 531 F.2d 671, 677 (2d Cir. 1976).

## APPLICATION OF LEGAL STANDARD

The defendant failed to comply with Local Civil Rule 7.1(a)(1) of this court because it did not include in its motion papers "[a] notice of motion, . . . which shall specify the applicable rules or statutes pursuant to which the motion is brought, and shall specify the relief sought by the motion." In their declarations, Eisenlohr-Moul and Pope make improper conclusory assertions, which the Court will disregard in determining the motion. In his declaration in opposition to the motion, Blaustein makes improper legal arguments and conclusory assertions, which the Court will disregard in determining the motion.

### *Whether Bad Faith Conduct Which Abused the Judicial Process Exists*

Filing TRO: Fraud on the Court

The defendant argues that: (i) the plaintiff and her counsel committed a fraud on the court by filing a TRO supported "solely by plaintiff's perjury" and failing to conduct any reasonable inquiry into her non-meritorious claims; and (ii) "Judge Woods has already approved sanctions against Plaintiff and her counsel for perpetuating a fraud on this Court through her sham

application for a TRO." The plaintiff contends that she prevailed on her TRO application and the assertions that the application was supported solely by the plaintiff's "perjury" and denied are false.

The defendant does not make citation to any part of the record in which Judge Woods determined, during the October 4, 2019 conference in connection with the plaintiff's TRO application, that the plaintiff and her counsel committed a fraud upon the court. Judge Woods stated, when inquiring of the plaintiff's counsel about the plaintiff's sworn statement:

> Your client provided a false sworn statement to the Court. I understand why it is that you are avoiding this fundamental issue. But the issue is that she stated, under oath, that "I never would have provided it to G4S." That was a flat statement of fact. I understand that she did not look for the e-mail and did not find it until after this issue was brought to her attention. The issue, however, is that this statement appears to be affirmatively false and was provided to the Court under cover of a sworn affirmation. I appreciate that the desire now is to focus on something else, but I would like to begin with what appears to be a false sworn statement to the Court that was the predicate for this application. So, counsel, I understand, again, why it is that you want to focus on something else, but why should I view this as anything other than a perjurious statement to the Court?

The following colloquy ensued:

> MR. BLAUSTEIN: Your Honor, I am not going to stand here and attempt to sugarcoat or avoid the issue. Ms. Wager would not have provided the document in an unredacted form that revealed confidential information. I believe that much is true. The fact that she provided the redacted document is clear now that she did. THE COURT: Thank you. At the same time, counsel, you understand that this affidavit is clearly referring to the redacted version of the document. So when she speaks to never having provided it to G4S, she must be referring to the document bearing Bates stamp G4S002369, which is identified previously, namely, the redacted version of the document. To the extent that the difference is [sic] that one is the unredacted and the other is the redacted version, that may be parsing the language too finely. I will certainly take this under consideration.

At the conclusion of the October 4, 2019 conference, Judge Woods stated in relevant part:

> With respect to defendant's application that I sanction plaintiff for the statement in her initial affidavit, I don't believe that at this point I have sufficient justification to

grant the relief that's requested, which is, in essence, dismissing the action. I would be happy to entertain requests for some other relief. But I note that the plaintiff has retreated from her prior position and the incorrect information only affected the litigation for a relatively short period of time. I would consider any application for any type of relief in light of those facts. I would consider a sanction only that would be commensurate with the nature and extent of the misstatement and its effect on the case. It may be that it's not worth further action, but I will decline, based on this record, to dismiss plaintiff's claims based on that misstatement in large part because Ms. Wager promptly retracted it.

The record demonstrates that Judge Woods took under consideration the issue of whether the plaintiff's statement "I never would have provided it to G4S" was meant to refer to an unredacted document as opposed to a redacted document that the plaintiff provided to the defendant. Judge Woods did not find that the plaintiff perpetrated fraud upon the court and he declined "to dismiss plaintiff's claims based on that misstatement in large part because Ms. Wager promptly retracted it." Moreover, Judge Woods noted that "the incorrect information only affected the litigation for a relatively short period of time." Although Judge Woods referred to the plaintiff's statement as "a false sworn statement" prior to ruling on the defendant's application for relief, when he ruled on the application, he referred to the plaintiff's statement as a "misstatement" and "incorrect information." Judge Woods did not find that the plaintiff's statement was made in bad faith, and the defendant does not assert that the plaintiff made the statement in bad faith. The Court finds that the defendant failed to establish by clear and convincing evidence that the plaintiff acted in bad faith when she made her statement, which is "a prerequisite to an award of sanctions under the court's inherent power." Yukos Capital S.A.R.L., 977 F.3d at 235. Accordingly, no sanctions are warranted based on the alleged fraud on the court in connection with the TRO filing. See Gleason v. Jandrucko, 860 F.2d 556, 559-60 (2d Cir. 1988) ("'fraud upon the court' as distinguished from fraud on an adverse party is limited to fraud which seriously affects the integrity of the normal process of adjudication" and "neither

perjury nor nondisclosure, by itself, amounts to anything more than fraud involving injury to a

single litigant.") (citations omitted).

Filing TRO: Violation of Rules 3.1(a) and 3.3(a)(3) Respecting Professional Conduct

> (a) A lawyer shall not bring or defend a proceeding, or assert or controvert an issue
> therein, unless there is a basis in law and fact for doing so that is not frivolous. A
> lawyer for the defendant in a criminal proceeding or for the respondent in a
> proceeding that could result in incarceration may nevertheless so defend the
> proceeding as to require that every element of the case be established.
> (b) A lawyer's conduct is "frivolous" for purposes of this Rule if:
> (1) the lawyer knowingly advances a claim or defense that is unwarranted under
> existing law, except that the lawyer may advance such claim or defense if it can be
> supported by good faith argument for an extension, modification, or reversal of
> existing law;
> (2) the conduct has no reasonable purpose other than to delay or prolong the
> resolution of litigation, in violation of Rule 3.2, or serves merely to harass or
> maliciously injure another; or
> (3) the lawyer knowingly asserts material factual statements that are false.

> New York Rules of Professional Conduct ("NYRPC") Rule 3.1.

The defendant asserts that the plaintiff's counsel failed "to conduct any reasonable

inquiry into plaintiff's non-meritorious claims and contentions" in connection with the TRO

filing, and "Judge Woods has already approved sanctions against Plaintiff and her counsel for

perpetuating a fraud on this court through her sham application for a TRO."  Other than

repeating the same assertions concerning the fraud on the court based on the alleged perjured

statement, the defendant does not make any argument explaining the basis for its assertion of a

Rule 3.1 violation or identifying in which one of the three ways a lawyer's conduct was

frivolous, as Rule 3.1 contemplates.  The defendant's conclusory assertions in its argument

subheading, without more, is not sufficient to support the finding that Ruel 3.1 was violated.  The

Court finds that the defendant did not establish that the plaintiff's counsel violated NYRPC Rule

3.1.

> A lawyer shall not knowingly . . . offer or use evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

NYRPC Rule 3.3(a)(3).

Although the defendant makes citation to Rule 3.3(a)(3) in connection with the TRO filing, it does not: (a) assert that the plaintiff's counsel offered or used the plaintiff's statement knowing that it was false; or (b) provide evidence that the plaintiff's counsel offered or used the plaintiff's statement knowing that it was false. As the record demonstrates, the plaintiff's counsel stated to Judge Woods that the plaintiff "would not have provided the document in an unredacted form that revealed confidential information. I believe that much is true," and Judge Woods took under consideration the issue of whether the plaintiff meant by her statement to refer to an unredacted document as opposed to a redacted document she provided to the defendant, and he found that the plaintiff "retreated from her prior position and the incorrect information only affected the litigation for a relatively short period of time." The Court finds that the defendant did not establish that the plaintiffs' counsel violated NYRPC Rule 3.3(a)(3) by offering or using evidence he knew to be false.

<u>Hostile and Bullying Behavior: Violation of Rules 3.1 and 3.3(f) Respecting Professional Conduct</u>

"In appearing as a lawyer before a tribunal, a lawyer shall not . . . engage in undignified or discourteous conduct." NYRPC Rule 3.3.(f)(2).

NYRPC Rule 3.1, on which the defendant relies, prohibits and defines frivolous conduct. The defendant did not identify any of the three bases for the definition of frivolous, as contemplated by Rule 3.1. Assuming that the defendant argues that counsel's conduct,

14

"screaming at her for an extended period during a meet and confer and calling her a 'fucking retard,'" was frivolous because it served "merely to harass or maliciously injure another" under Rule 3.1(b)(2), the defendant's evidence does not support its argument.  Eisenlohr-Moul stated in her declaration that "during a meet and confer telephone conference regarding written discovery disputes, Plaintiff's counsel Samuel Blaustein screamed at me and called me 'a fucking retard.'" Eisenlohr-Moul did not state that Blaustein screamed "at her for an extended period during a meet and confer," as asserted by the defendant in its memorandum of law.  Eisenlohr-Moul stated: "During that time, I was in the third trimester of my pregnancy during a global pandemic"; however, she did not identify the date of the meet and confer conference she referenced.  Eisenlohr-Moul stated she "was extremely upset by this unprovoked attack which [sic] also witnessed by my associated, Jennifer Pope," and "[d]uring that time, I was in the third trimester of my pregnancy during a global pandemic."  In her declaration, Pope repeated the same statements made by Eisenlohr-Moul: (i) "during a meet and confer telephone conference regarding written discovery disputes, Plaintiff's counsel Samuel Blaustein screamed at Ms. Eisenlohr-Moul, calling her 'a fucking retard'"; and (ii) "[d]uring that time, Ms. Eisenlohr-Moul was in the third trimester of her pregnancy during a global pandemic."  Pope did not state that she: (1) witnessed the "unprovoked attack," as asserted by Eisenlohr-Moul; (2) was present during the meet and confer at issue; or (3) heard "Blaustein screamed at Eisenlohr-Moul, calling her 'a fucking retard.'"  Pope stated: "I heard counsel for Plaintiff describe in detail his hiring of a barrister in the United Kingdom to subpoena documents from G4S international headquarters in London," but she did not state that she heard "Blaustein scream[] at Eisenlohr-Moul, calling her 'a fucking retard,'" which is of concern to the Court.  Given that Pope failed to explain the basis for her knowledge that, during an unidentified time, Eisenlohr-Moul "was in the third

15

trimester of her pregnancy during a global pandemic," and in the absence of Pope's statement

that her factual contentions are based on her personal knowledge, such as, for example, she heard

"Blaustein scream[] at Eisenlohr-Moul, calling her 'a fucking retard,'" repeating Eisenlohr-

Moul's statements is not sufficient to establish that Pope witnessed the "unprovoked attack," as

asserted by Eisenlohr-Moul.

Blaustein stated in his declaration that he does not recall making the statements attributed

to him and that "the specific comment attributed to me on the face of G4S' motion is inconsistent

with the comment that G4S attributes to me in the body of G4S' motion. (Cf. ECF 150 at 1, 5)."

The defendant asserts, on page one of its motion, that the plaintiff's counsel "repeatedly and

flagrantly disregarded New York's Rules of Professional Conduct by . . .  engaging in

undignified and discourteous behavior by personally attacking G4S' counsel during her

pregnancy and calling her a 'fucking moron' during a meet and confer conference," while at the

same time asserting, on page five of its motion, that "plaintiff's attorney bullies counsel for G4S

based on his client's TRO loss, calling her a 'fucking retard' during her third trimester of her

pregnancy."  The internal inconsistency of the statements the defendant attributes to Blaustein in

its motion papers, as well as the paucity of details about the meet and confer during which the

alleged conduct occurred, give the Court pause when assessing serious allegations of misconduct

against the plaintiff's counsel.  Eisenlohr-Moul's conclusory statement that "Blaustein continued

to bully me even after I gave birth, complaining about my need for lactation breaks and my

COVID-limited childcare," without any specific details about the date(s) and circumstances

during which Blaustein was alleged to have been "complaining about my need for lactation

breaks and my COVID-limited childcare" is insufficient to establish a violation of NYRPC Rule

3.1 or Rule 3.3.(f)(2).  Blaustein submitted evidence demonstrating that the plaintiff consented to

a stay of trial deadlines to accommodate Eisenlohr-Moul's pregnancy and Blaustein

accommodated Eisenlohr-Moul's nursing-break schedule during Posner's deposition.

The Court finds that the defendant failed to show a violation of NYRPC Rule 3.1 or Rule

3.3.(f)(2).

<u>Threatening Frivolous Criminal Charges: Violation of Rule 3.4(e) Respecting Professional
Conduct</u>

  "A lawyer shall not . . . present, participate in presenting, or threaten to present criminal

charges solely to obtain an advantage in a civil matter."  NYRPC Rule 3.4(e).

  Eisenlohr-Moul stated in her declaration that Blaustein: (a) "repeatedly threatened to file

criminal charges against Mr. Posner based on the same allegations discredited by Plaintiff's

fraudulent TRO"; (b) "threatened me, stating that his client intended to press criminal charges

against Mr. Posner if G4S did not produce certain documents and information"; and (c)

"described in detail his actions in hiring a barrister in the United Kingdom to subpoena

documents from G4S."  Pope made the same statements as Eisenlohr-Moul in her declaration,

except that she stated she "heard counsel for Plaintiff describe in detail his hiring of a barrister in

the United Kingdom to subpoena documents from G4S international headquarters in London."

Blaustein stated in his declaration that: (1) "counsel for G4S represented to me at the beginning

of this case that relevant documents were located on G4S'corporate parent's servers in the

United Kingdom and those documents were requested" as demonstrated in the record of this

case; (2) "at no point did I ever threaten to hire a barrister or to otherwise seek discovery in the

United Kingdom from G4S' corporate parent for purposes of filing criminal charges against Mr.

Posner or otherwise"; (3) "on October 1, 2019 following the issuance of the TRO I inquired as to

whether Mr. Posner would assert a Fifth Amendment right against self-incrimination at his

deposition because I intended to raise the issue during the October 4, 2019 preliminary

injunction hearing"; and (4) "I informed the Court that, with respect to Mr. Posner's alleged unauthorized access of Wager's Drop Box 'there are statutes that say wrongful access is a violation for which there are *civil* remedies.' (ECF 76 Tr. 11:17-18) (emphasis added)."

Eisenlohr-Moul failed to provide any details, including dates and words used, in connection with Blaustein's repeated threats to file criminal charges against Posner and she did not identify the documents and information which she asserts Blaustein wanted by threatening criminal charges against Posner. Pope stated that she "heard counsel for Plaintiff describe in detail his hiring of a barrister in the United Kingdom to subpoena documents from G4S international headquarters in London"; however, Blaustein provided an explanation for hiring a barrister in the United Kingdom to subpoena documents from the defendant, which was that the defendant represented that relevant documents exist in its headquarters in London. The defendant's conclusory assertions that Blaustein made repeated threats to file criminal charges against Posner are unsupported by evidence and meritless. The Court finds that the defendant failed to establish a violation of NYRPC Rule 3.4(e).

The defendant failed to establish that bad faith conduct which abused the judicial process exists that would warrant the Court's exercise of its inherent powers. See Chambers, Inc., 501 U.S. at 44-45, 111 S. Ct. at 2132 ("Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.").

## CONCLUSION

For the foregoing reasons, the defendant's motion for sanctions, Docket Entry No. 150, is

denied.

Dated:   New York, New York                                    SO ORDERED:
         September 21, 2021

                                                               _Kevin Nathaniel Fox_
                                                               KEVIN NATHANIEL FOX
                                                               UNITED STATES MAGISTRATE JUDGE